In re Robert G. LARICCIA, Jr., Debtor.

Cheryl A. LARICCIA, Plaintiff,

v.

Robert G. LARICCIA, Jr., Defendant.

Bankruptcy No. B88–00943–Y.

Adv. No. 88–0077.

United States Bankruptcy Court,
N.D Ohio.

May 22, 1989.

---

Robert J. Buckley, Niles, Ohio, for debtor/defendant.

James S. Gentile, Youngstown, Ohio, for plaintiff.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

This cause is before the Court on the Complaint of Plaintiff, CHERYL A. LARICCIA, to determine whether the Debtor's obligation to Plaintiff constitutes nondischargeable alimony, maintenance or support under the terms of 11 U.S.C. § 523(a)(5).

### FACTS

Plaintiff and Debtor were married for thirteen (13) years. Two (2) children, Rachel Jean and Marie Ann, were born as issue to the marriage. The Trumbull County, Ohio, Common Pleas Court awarded Plaintiff a Decree of Divorce from the Debtor on April 21, 1987. The terms of the Judgment Entry of Divorce ("Exhibit A"), which are germane to a ruling here, are:

1.  Debtor shall pay to Plaintiff child support of Three Hundred Twenty-Five & 00/100 Dollars ($325.00) per month for the two minor children of the parties.

2.  Debtor shall pay to Plaintiff alimony and support of Three Hundred Forty & 00/100 Dollars ($340.00) per month for twelve (12) months from April 8, 1987 through April 7, 1988, terminable only upon the death or remarriage of the Plaintiff.

3.  Plaintiff shall vacate the marital residence on July 1, 1987, delivering possession to the Debtor. Designated interests of Plaintiff in marital property, totalling Four Thousand, Eight Hundred Five & 77/100 Dollars ($4,805.77), were to be paid to Plaintiff no later than June 1, 1987. The court stated its intent in this regard "to provide Plaintiff with adequate funds to remove herself and the parties' minor children from the marital residence by July 1, 1987, ..."

4.  Debtor shall pay to Plaintiff Eight Thousand Eighty & 00/100 Dollars ($8,080.00) no later than July 1, 1987. The parties had stipulated that figure as Plaintiff's marital financial equity in the marital residence.

5.  Debtor shall assume and pay the marital residence mortgage, the home improvement loan, and the indebtedness due Mastercard, and hold harmless and indemnify Plaintiff thereon.

Plaintiff testified that she had not been employed outside the home during the course of her marriage to the Debtor. Since Plaintiff felt ill-equipped to enter the job market, she entered a two-year program at Trumbull Business College in September, 1986. Plaintiff attended classes Monday through Thursday, and attended summer classes. She graduated in March, 1988, with a 3.96 grade average.

With knowledge that Plaintiff would be attending school, the Domestic Relations Court's Order provided that Plaintiff would have a total of child support and cash alimony payments of Six Hundred Sixty–Five & 00/100 Dollars ($665.00) per month and

that she and her children could continue to reside in the marital residence until July 1, 1987. Debtor was required to maintain the mortgage payments. The Decree required Plaintiff and her children to vacate the residence on July 1, 1987, and the Debtor was to then pay Plaintiff the sum of Eight Thousand, Eighty & 00/100 Dollars ($8,080.00) as and for her equity in the marital residence. Since she and her children were to move from the marital residence at that time, it appears that the sum to be paid to her for her equity would be used by her to pay rent and other costs of living until she graduated from college. Although she was scheduled to complete the program at the end of the 1988 spring term, she graduated early by attending the summer classes. After she graduated, she had a part-time job with an employer paying her just above the minimum wage, but has been on layoff from that employer for some period of time prior to the trial of this cause.

Debtor was represented during the divorce proceedings by James Franks, Esq. After Debtor had waived his attorney/client privilege, Attorney Franks testified in these proceedings as Debtor's witness. On cross-examination, Attorney Franks testified that the courts in Trumbull County routinely award one- to two-months' alimony for every year of marriage. According to Attorney Franks, this might vary with consideration of such extenuating circumstances as the employment history and prospects of a former wife. Attorney Franks confirmed that it was the Judge, and not the parties, who decided upon the Eight Thousand, Eighty & 00/100 Dollar ($8,080.00) payment to Plaintiff.

Consistent with the Divorce Decree, Plaintiff vacated the marital residence prior to July 1, 1987. The Debtor failed to pay the Eight Thousand, Eighty & 00/100 Dollars ($8,080.00) to Plaintiff, as required by the April 21, 1987 Judgment Entry. Plaintiff thereafter obtained a state court judgment granting Plaintiff interest of eight percent (8%) from July 1, 1987. The Order, marked in these proceedings as "Exhibit B", further provided:

If the Defendant has not paid said equity to the Plaintiff by September 1, 1987, the Plaintiff may offer to the Court, without further hearing, an order that the premises known as 276 Old Oak Drive, Cortland, Ohio 44410, be sold at public sale, as provided herein, by the Sheriff of Trumbull County, Ohio. Upon the sale of said real estate at public sale, the mortgage indebtedness and real estate taxes secured thereon, together with the costs of said sale, will first be paid and thereafter, the Plaintiff will be paid her equity therein of Eight Thousand, Eighty & 00/100 Dollars ($8,080.00), plus eight percent (8%) interest per annum from July 1, 1987. Should said public sale fail to generate sufficient funds to satisfy in full, the referenced lien of the Plaintiff, the Defendant will be indebted to the Plaintiff for the remaining balance of same for which judgment and execution will issue.

Despite his obligation under the terms of the Divorce Decree, Debtor failed or neglected to maintain payments on the marital residence. He misrepresented to the mortgage holder that he was unemployed and could not make the payments. The evidence shows he continuously was employed at an annual income of approximately $48,000.

Debtor filed for relief under Chapter 7 of Title 11 on July 19, 1988. Debtor allowed the marital property to go to foreclosure sale after filing his Petition here. His sworn Petition showed the market value of the property at Seventy Thousand & 00/100 Dollars ($70,000.00), and the amount of the mortgage holder's claim at approximately Fifty–One Thousand & 00/100 Dollars ($51,000.00). It appears that no action was taken by Debtor to protect the equity in the residence. There is no evidence of the identity of the purchaser or of the purchase price at the foreclosure sale. Prior to filing his Petition here, the Debtor purchased other residential property and it appears that he has reaffirmed his obligation on that property and continues to reside there. Of the four (4) secured obligations of the Debtor, three

(3) of them (the Debtor's new residence, an automobile, and a motorcycle) were reaffirmed. Only the obligation on the former marital property was not reaffirmed, even though the Schedule revealed approximately Twenty Thousand & 00/100 Dollars ($20,000.00) in equity in that property. On September 29, 1988, the Trustee was ordered to abandon any interest of the estate in the property pursuant to 11 U.S.C. § 554 on Motion of TRUMBULL SAVINGS & LOAN COMPANY, which was granted relief from the automatic stay to proceed with its state court foreclosure action.

Debtor's schedule of unsecured creditors listed six (6) creditors owed a total of Eighteen Thousand, Nine Hundred Ninety–One & 37/100 Dollars ($18,991.37), including Eight Thousand & 00/100 Dollars ($8,000.00) owing to the Plaintiff. Another of the scheduled unsecured obligations was to a Pauline Filler on a personal loan for Four Thousand, Eight Hundred Dollars ($4,800.00). That creditor did not file a proof of claim and it is thus questionable whether that was an actual obligation of the Debtor. The Debtor reaffirmed his unsecured obligations with Sears, Roebuck & Company. The credit card obligations to Society Bank–Mastercard in the amount of Two Thousand, One Hundred Eighty–Eight & 70/100 Dollars ($2,188.70) and to Bank One of Warren, Ohio, on a home-improvement loan in the amount of Eight Hundred Seventy–Eight & 00/100 Dollars ($878.00) were discharged.[1] CHERYL A. LARICCIA filed this adversary proceeding on October 24, 1988.

## LAW

11 U.S.C. Sec. 523(a)(5) provides:

(a) A discharge under Section 727, 1141, or 1328(b) of this Title does not discharge an individual debtor from any debt—

. . . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record or property settlement agreement, but not to the extent that—

. . . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support....

Debtor does not contest the fact that the amounts are due Plaintiff under the terms of the Trumbull County Court's Judgment Entries. However, Debtor contends that these amounts constitute a dischargeable "property settlement." In *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983), our Court of Appeals set forth a three-step test to be applied under these circumstances based on the following separate inquiries:

(1) The intent of the court or the parties creating the obligation.

(2) The actual effect of the obligation in providing for the necessary support of the debtor's dependents.

(3) The reasonableness of the debt, both at the time of its creation and at the time of the bankruptcy action.

With respect to the first two prongs of the *Calhoun* test, the evidence taken as a whole suggests that the Domestic Relations Judge intended to create a support obligation. Plaintiff was in school at the time of the divorce and her desire to remain in school until mid–1988 was before the court when the judgment entry was fashioned. The Court was obviously aware that Plaintiff and the children were to reside rent free in the marital residence until July 1, 1987. After that, she and the children would have to obtain other living quarters. An additional amount was necessary to fulfill their actual living cost requirements. According to guidelines stated in Attorney Franks' testimony, the total amount awarded to Plaintiff for child support and alimony, including the Eight Thou-

---

1. Paragraph 14 of the Divorce Decree (Exhibit A) provided Debtor would assume the Mastercard obligation and hold Plaintiff harmless on that obligation. Paragraph 22 of the Divorce Decree held Debtor harmless on the home-improvement loan.

sand, Eighty & 00/100 Dollars ($8,080.00), would be consistent with the usual alimony awards of the Trumbull County Court of Common Pleas.

With respect to the third prong of *Calhoun*, we find that the Trumbull County Court's orders were reasonable. Plaintiff had no separate resources or employment at the time of the divorce. Plaintiff's receipt of some assistance from her parents did not relieve the Debtor of his duty of support under applicable Ohio law. Furthermore, *Calhoun* teaches that only an obligation which is "manifestly unreasonable" to the extent it "substantially exceed[s] a spouse's present and foreseeable ability to pay" should be reduced in amount. *In re Calhoun*, 715 F.2d at 1110. Here, Debtor has been consistently employed at an income of approximately Forty–Eight Thousand Dollars ($48,000.00) per year.

The Court's observation of Debtor's demeanor as a witness causes us to conclude that his testimony should not be credited. The rebuttal evidence offered was credited, but was not conclusive. Both Debtor and Debtor's counsel are admonished that offering the parties' minor child as a rebuttal witness was inappropriate. Her testimony added nothing of substance, and it put her in a position that can neither be condoned nor defended.

The Debtor's testimony at trial, as well as his sworn Petition, show that the Debtor at all times pertinent herein earned approximately Forty–Eight Thousand Dollars ($48,000.00) annually. This bankruptcy discharged two unsecured obligations in the total amount of Three Thousand, Twenty & 04/100 Dollars ($3,020.04),[2] the Eight Thousand & 00/100 Dollar ($8,000.00) obligation to his former spouse under the Divorce Decree, and a questionable personal loan from Pauline Filler. The other unsecured obligations were reaffirmed. As to Debtor's secured obligations, all were reaffirmed except for the former marital property in which there was, by Debtor's sworn admission in his Petition, an equity of approximately Twenty Thousand Dollars ($20,000.00). If this evidence had been before the Court on an action pursuant to 11 U.S.C. § 727, the evidence may have been sufficient to deny Debtor a discharge overall.

The Debtor had a fiduciary obligation under the terms of the Divorce Decree to continue payments on the former marital residence. There was no showing that he lacked the ability at any time to make those payments. The totality of the circumstances here suggest that this bankruptcy proceeding was undertaken almost wholly to avoid Debtor's obligations to his former spouse. This is a text-book example of abuse of the bankruptcy system. That, however, is not the issue before us. We are asked to determine whether Debtor's obligations to his former spouse under their Divorce Decree constitute support, maintenance, or alimony not dischargeable here, or whether the obligations are property settlements and, thus, dischargeable obligations. The evidence taken as a whole clearly shows that the Eight Thousand, Eighty Dollar ($8,080.00) obligation of Debtor to his former spouse was not a property settlement but, rather, was intended by the Court of Common Pleas to be in the nature of support, maintenance and alimony, and the Court so finds. Further, the debts which the Trumbull County Court ordered Debtor to assume and to hold Plaintiff harmless on were in the nature of nondischargeable support, maintenance and alimony.

For the foregoing reasons and on the authorities cited, the Court finds that the Debtor's obligations for the home-improvement loan, the Master Charge obligation under the terms of the Divorce Decree Judgment Entry, and the amount of Eight Thousand, Eighty Dollars ($8,080.00), plus interest of eight percent (8%) per annum effective July 1, 1987 until fully paid by Debtor, resulted from an award of alimony, maintenance or support within the meaning of § 523(a)(5). As such, the amounts owing are nondischargeable.

2. *See* footnote 1.

In making its determination, the Court has considered all of the evidence presented, whether or not referred to in this Opinion. This Memorandum Opinion consitutes the Court's findings and conclusions pursuant to Bankruptcy Rule 7052. An appropriate Order shall enter.