In re Jerome M. AZIA, Debtor.

Sheryl E. LINET, Plaintiff,

v.

Jerome M. AZIA, Defendant.

Bankruptcy No. 92–41191–JFQ.
Adv. No. 92–4179.

United States Bankruptcy Court,
D. Massachusetts.

April 22, 1993.

David W. Ostrander, Hendel Collins & Newton, Springfield, MA, for debtor/defendant.

Alan L. Sachs, Enfield, CT, for plaintiff, Sheryl E. Linet.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

Jerome E. Azia (the "Defendant") and Sheryl E. Linet (the "Plaintiff") were divorced on January 3, 1991 after nineteen years of marriage. The Plaintiff and Defendant have two minor children who reside with the Plaintiff. A Judgment of Divorce Nisi (the "Decree") was entered by the Probate and Family Court setting forth the following obligations of the Defendant: (1) conveyance of all of his right, title, and interest in the marital home located at 29 Canterbury Lane, Longmeadow, Massachusetts (the "residence") to the Plaintiff; (2) payment of all the obligations arising from a home equity loan secured by a second mortgage on the residence and to indemnify and hold the Plaintiff harmless thereon; (3) payment to the Plaintiff of $650 per week for support for five years or until the earlier of Plaintiff's death or remarriage; (4) payment to the Plaintiff of $250 per week to support the parties' two children until both children are either emancipated or reach age twenty-one; (5) payment to the Plaintiff of $11,000 per year for five years commencing five years from the date of the Decree; (6) payment to the Plaintiff of all amounts owing to the McLean Hospital arising from the Plaintiff's hospitalization and indemnification of the Plaintiff with respect thereto; (7) payment of the Plaintiff's attorney's fees ($20,343.75) and expenses ($8,668.80) incurred during the divorce proceeding; (8) payment of the Master's fees of $6,911.00 incurred during the divorce proceeding and reimbursement to the Plaintiff for the $1,000.00 she previously advanced toward this obligation.

The parties submitted a copy of the Master's Report and each relies on certain find-

ings therein. I, too, rely on the Master's findings as dispositive of issues relating to income and earning potential of the parties.

The Defendant is a dentist and earns approximately $121,000 per year. The Plaintiff has a history of psychological problems which twice resulted in her admittance as an inpatient, the first time at Baystate Medical Center for eleven days and again at McLean Hospital for over three months. The Master's Report states that the Plaintiff's earning capacity is approximately $145.00 per week.

Unable to satisfy certain obligations to the Plaintiff pursuant to the Decree, the Defendant was held in contempt on January 28, 1992 and incarcerated on April 21, 1992. On April 22, 1992 the Defendant filed his chapter 7 petition.

The Plaintiff commenced this adversary proceeding seeking a determination that the obligations set forth in the Master's Report are nondischargeable in this bankruptcy proceeding. Cross motions for summary judgment have been filed. The Plaintiff contends that all the obligations set forth in the Master's Report are in the nature of alimony or support, so that they are exempt from discharge under section 523(a)(5). The Defendant concedes that the amounts designated as "support" in the Master's Report, specifically the $650 per week owed to the Plaintiff and the additional $250 per week owed for child support, are nondischargeable under section 523(a)(5). The Defendant argues, however, that the remaining obligations are in the nature of a property settlement and are therefore dischargeable. I agree with the Plaintiff's position in all respects and therefore hold that all of the debts owing by the Defendant to the Plaintiff pursuant to the Decree are in the nature of support and thus nondischargeable under section 523(a)(5).

Section 523(a)(5)(B) provides:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt ...

(5) to a spouse, former spouse, or child of the debtor, for alimony to, mainte-

nance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that ...

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

The question of whether a debt is support or a property settlement is one of federal bankruptcy law, not state law. H.R.Rep. No. 595, 95th Cong., 2d Sess. 364 (1978); S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978); *Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759, 762 (3d Cir.1990); *Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1057 (8th Cir.1983). Thus a bankruptcy court is not bound by a divorce decree's characterization of a debt as support or a property settlement. E.g., *In re Gianakas*, 917 F.2d at 762; *Brody v. Brody (In re Brody)*, 120 B.R. 696, 698 (Bankr. E.D.N.Y.1990). The language of section .523(a)(5)(B) indicates a court must look beyond the label which the parties gave to the debt and inquire into the true nature of the debt. *In re Gianakas*, 917 F.2d at 762. As one court found, "a debt could be in the 'nature of support' under section 523(a)(5) even though it would not legally qualify as alimony or support under state law." *Yeates v. Yeates (In re Yeates)*, 807 F.2d 874, 878 (10th Cir.1986).

In determining whether a debt is in the nature of support or a property settlement, most courts begin by looking at the intent of the parties at the time the agreement was made. E.g., *In re Gianakas*, 917 F.2d at 762; *Balvich v. Balvich (In re Balvich)*, 135 B.R. 323, 324 (N.D.Ind.1991); *Hoffman v. Schweig (In re Schweig)*, 105 B.R. 140, 143 (Bankr.D.D.C.1989). In *In re Gianakas*, the court cited three primary factors to be considered: (1) the language and substance of the agreement in the context of surrounding circumstances, (2) the financial circumstances of the parties at

the time of the agreement, and (3) the function served by the obligation at the time of the settlement. Under the last factor, an obligation which enables one party to maintain daily necessities is likely to indicate an intent to provide support. 917 F.2d at 762–3. For the reasons set forth below, I conclude that at the time of the Decree the parties intended the obligations set forth to serve as support for the Plaintiff in light of the Defendant's superior earning capacity and the Plaintiff's limited ability to earn an income sufficient to support herself and her minor children.

*Obligation to Convey the Residence and to Pay the Second Mortgage*

■ The Plaintiff and Defendant clearly intended the Plaintiff and the children would continue to reside in the marital home after the divorce. Courts interpret obligations which provide former spouses with daily necessities such as shelter as indicative of an intent to provide support. *E.g., In re Gianakas*, 917 F.2d at 764; *Burch v. Burch (In re Burch)*, 100 B.R. 585, 590 (Bankr.M.D.Fla.1989). I therefore rule that the Defendant's obligation to convey the residence to the Plaintiff is in the nature of support.

■ Based on the Master's findings relating to the parties' financial situation, this intent to provide the Plaintiff and the children with a home could not have been carried out unless the Defendant paid the second mortgage. Courts have consistently held that where an obligation is essential to enable a party to maintain a basic necessity such as food, lodging, or transportation the debt is in the nature of support. *Robinson v. Robinson (In re Robinson)*, 921 F.2d 252, 253 (10th Cir.1990) (second mortgage payments and hold harmless agreement nondischargeable despite refinancing); *In re Gianakas*, 917 F.2d at 762 (assumption of second mortgage debt which enables family to remain in home is nondischargeable support); *In re Yeates*, 807 F.2d at 879 (obligation to pay mortgage nondischargeable when necessary to enable former spouse to maintain the home); *Cacolici v. Transohio Savings (In re Cacoli-*

*ci)*, 108 B.R. 578, 584 (Bankr.N.D.Ohio 1989) (obligations with respect to spouse's automobile nondischargeable as support). These courts reason that it is counterintuitive to assume parties intended to provide family members with basic necessities but not afford them the means to pay for them. *In re Gianakas*, 917 F.2d at 764.

Without contributions from the Defendant toward the second mortgage, the Plaintiff would be unable to keep the residence. On nearly identical facts, the court in *In re Gianakas* held that an obligation to make second mortgage payments was in the nature of support thus nondischargeable. 917 F.2d 759. The court reasoned that at the time of the divorce the parties intended the Plaintiff to continue to reside in the former marital home with the couple's children. Focusing on the nature of the obligation at the time it was undertaken and without regard to the current financial situation of the parties, the court ruled the agreement to provide shelter should be construed as an obligation to provide support and found the debt nondischargeable. *Id.* at 763.

I similarly conclude that an obligation which enables one's family to maintain shelter is in the nature of support thus nondischargeable under 523(a)(5). The majority of courts so hold. *E.g., In re Robinson*, 921 F.2d at 253; *In re Gianakas*, 917 F.2d at 764; *In re Yeates*, 807 F.2d at 879; *In re Balvich*, 135 B.R. at 325–6; *Rogers v. Kiley (In re Rogers)*, 117 B.R. 122, 125 (Bankr.M.D.Pa.1990); *Lariccia v. Lariccia (In re Lariccia)*, 110 B.R. 822, 826 (Bankr. N.D.Ohio 1989); *In re Cacolici*, 108 B.R. at 584. The Defendant's agreement to indemnify and hold the Plaintiff harmless on that debt is nondischargeable for the same reasons. In *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir.1983), the court noted that where hold harmless clauses relate to debts in the nature of alimony or support "[b]ankruptcy courts have uniformly found hold harmless clauses to create nondischargeable obligations." They are but different aspects of the same obligation. The hold harmless agreement imposes liability upon the Defendant for all

consequences of his failure to pay. The court in *In re Robinson,* affirmed the lower court's decision which ordered the debtor to maintain second mortgage payments and to hold his former spouse harmless for the debt finding the obligation in the nature of alimony or support. 921 F.2d at 253.

*The $55,000 Payment*

■ The Defendant urges that the Master's Report, which labeled the obligation to pay $55,000 as a "Division of Property," is evidence of the parties' intent to allocate property by means of this provision. Further, the Defendant suggests that the presence of other provisions expressly providing for support indicates the obligation was intended as a property settlement. The Defendant cites numerous factors employed by courts in considering whether a debt constitutes support or a property settlement.

While courts do look at many factors to determine the dischargeability of a debt, the first inquiry focuses on the intent of the parties at the time of the agreement. *E.g., In re Gianakas,* 917 F.2d at 762. I conclude that the parties intended this payment of $11,000 per year for five years as a continuation of support payments. Notably, these payments are set to commence upon the expiration of "support payments" under the Decree.

The structure of the payments is less important than their substance. Courts have found lump sum payments to be in the nature of support when circumstances indicate that the payment was intended to provide support. *In re Williams,* 703 F.2d at 1057; *In re Brody,* 120 B.R. at 704 (agreement to pay $1,000,000 in four installments nondischargeable to the extent necessary to provide support of $100,000 per year to former spouse); *In re Lariccia,* 110 B.R. at 826 (lump sum debt of $8,080.00 was nondischargeable support as it was necessary to meet living expenses).

In *In re Brody,* the court considered the needs of the parties at the time of the agreement and their relative financial situations. Concluding that at the time of the agreement Mrs. Brody required support from her former spouse, the court held that the "Distributive Award" providing for the payment of $1,000,000 over four years was nondischargeable to the extent necessary to provide Mrs. Brody with the parties' agreed upon support amount of $100,000 per year. 120 B.R. at 703–04. The court reasoned that "[a] property settlement otherwise dischargeable may be rendered 'actually in the nature of alimony, maintenance, or support' and thus become nondischargeable where both of the spouses intended that one of the primary functions to be served by the property settlement was to secure the source and the means to generate support." *Id.* I agree with the reasoning in *Brody* and accordingly find that the $55,000 payment is in the nature of support.

*The $56,000 McLean Hospital Bill*

■ Courts have ruled that medical expenses are in the nature of support. *In re Gianakas,* 917 F.2d at 764; *Draper v. Draper,* 790 F.2d 52, 54 (8th Cir.1986); *In re Rogers,* 117 B.R. at 125. They reason that payment of these expenses is essential to enable the obligee to maintain life's basic necessities. *In re Rogers,* 117 B.R. at 125. If the Defendant were discharged from liability on this debt which approximates $56,000, the Plaintiff would almost certainly be forced to sell her home. Because the Decree indicates the parties' intent to provide the Plaintiff and the children with a home, payment of these medical expenses is critical to the Plaintiff's ability to maintain the residence. I thus conclude that this debt is in the nature of support and thus nondischargeable. I similarly rule, for reasons stated above with respect to the second mortgage that the indemnification agreement on this bill is likewise nondischargeable as a support obligation.

*Attorney's Fees and Expenses and Master's Fees*

■ The Defendant concedes attorney's fees and other expenses are in the nature of support when they relate to services concerning nondischargeable alimony or

support. *E.g., In re Balvich,* 135 B.R. at 327; *Rudicil v. Rudicil (In re Rudicil),* 125 B.R. 747, 751 (Bankr.N.D.Ohio 1991); *In re Wisniewski,* 109 B.R. 926, 930 (Bankr.E.D.Wis.1990); *In re Burch,* 100 B.R. at 590. Having determined that all of the obligations in the Decree are nondischargeable as support, I accordingly rule the attorney's fees of $20,343.75 and expenses of $8,668.80 are nondischargeable. For the same reason, the Master's fees of $6,911.00 are nondischargeable as support-related, plus the Defendant's obligation to reimburse the Plaintiff $1,000 for fees previously paid to the Master.

The Plaintiff's motion for summary judgment is accordingly granted in all respects, and the Defendant's motion for summary judgment is denied. A separate judgment has issued declaring all debts in the Decree nondischargeable.

#### ORDER

Upon cross motions for summary judgment by the Plaintiff and the Defendant it is hereby

ORDERED, that the Plaintiff's motion for summary judgment is granted in all respects

ORDERED, that the following debts owed to the Plaintiff pursuant to the Judgment of Divorce Nisi entered by the Probate and Family Court Department, Hampden Division on January 3, 1991 are nondischargeable pursuant to 11 U.S.C. § 523(a)(5)(B): (1) The obligation to convey to the Plaintiff all right, title and interest in and to the former marital residence located at 29 Canterbury Lane, Longmeadow, Massachusetts; (2) The obligation to pay the home equity loan on the residence and to indemnify and hold the plaintiff harmless thereon; (3) The support obligations set forth in the Decree of $650.00 per week for the Plaintiff's support for the lesser of five years or until remarriage or death of the Plaintiff and $250.00 per week in child support until both children are emancipated or reach age twenty-one; (4) the obligation to pay $55,000 in five installments of $11,000 over five years commencing five years after the entry of the De-

cree; (5) The obligation to pay the McLean Hospital bill and to indemnify and hold the Plaintiff harmless thereon; (6) The obligation to pay the Plaintiff's attorney's fees of $20,343.75 and expenses of $8,668.80; and (7) The obligation to pay the Master's fees of $6,911.00 and to reimburse the Plaintiff $1,000 which she previously paid toward this debt.