PHILIP MORRIS, INC. *vs.* MURIEL LITEL. No. 89-P-1347. April 16, 1991. *Guaranty. Agency*, What constitutes. *Husband and Wife*, Spouse as agent. *Practice, Civil*, Judgment notwithstanding verdict.

Muriel and Robert Litel, husband and wife, each owned fifty percent of a closely-held corporation which operated a wholesale distribution business. Cigarettes were their principal product. In 1986, Robert sought an extension of credit from the plaintiff, Philip Morris, Inc., for the purpose of expanding the Litels' business. Philip Morris conditioned its approval of the extension of credit on the execution of a personal guaranty by both Muriel and Robert. Robert signed his own name as well as that of Muriel to the form provided by Philip Morris, and Robert had the signatures notarized. In November of 1988, Philip Morris informed Muriel and Robert by letter that their business was in default of the credit terms and that, in accordance with their guaranty, they would be looked to personally for payment of the indebtedness. Muriel and Robert discussed the letter and turned it over to their attorney. In early December, their attorney informed Philip Morris that the Litels were unable to pay the debt; no mention was made then of the validity of Muriel's signature on the guaranty. Philip Morris filed the present action against Muriel and Robert on December 7, 1988, and, for the first time on December 14, 1988, Muriel denied the genuineness of her signature on the guaranty. Robert conceded his liability to Philip Morris for the full amount due, $411,956, after the trial had begun. Muriel's personal liability, notwithstanding the absence of her genuine signature on the document, remained of significance because all the couple's assets of value were in her name or in their joint names. A motion for directed verdict on Muriel's behalf was filed and denied. The jury found in favor of Philip Morris. The judge, however, allowed Muriel's

motion for judgment n.o.v.[1] We reverse the judgment n.o.v. and reinstate the judgment based on the jury verdict.

After the judge denied Muriel's motion for a directed verdict, he instructed the jurors to reach a general verdict based upon a consideration of three separate theories of liability: agency, estoppel, and unjust enrichment. There was no request for special questions. Nor was there any objection on behalf of Muriel, after the charge and before the jury retired to deliberate, to the submission of any one of the three separate theories to the jury. Muriel has not made an argument on appeal that the judgment n.o.v. should be affirmed because, even if there was sufficient evidence to support one theory, there was insufficient evidence to support all three theories. We limit our discussion, therefore, to one theory, agency, on which we conclude there was sufficient evidence.

Although direct evidence of actual authority on the part of Robert to connect Muriel's personal assets to secure the indebtedness to Philip Morris was absent, we need not decide whether the jury could reasonably have inferred Muriel's actual knowledge and consent to the transaction from the evidence. There was at least sufficient evidence of implied authority. The jury were warranted in finding that, by engaging in a course of conduct involving her acquiescence in, and adoption of, previous similar acts, Muriel indicated her acquiescence in Robert's signing her name to the personal guaranty. See *LaBonte* v. *White Constr. Co.*, 363 Mass. 41, 45 (1973). Contrast *Weisman* v. *Saetz*, 11 Mass. App. Ct. 440, 441 (1981). See also Restatement (Second) of Agency, §§ 7, 22 and 43(2) (1957).

The marital relationship, see *Fennell* v. *Wyzik*, 12 Mass. App. Ct. 909, 910 (1981); *Rousseau* v. *Gelinas*, 24 Mass. App. Ct. 154, 157 (1987); Restatement (Second) of Agency § 22 comment b, and coownership of the business were relevant factors. Although neither factor was dispositive on the question of implied authority, there was other relevant evidence. Both Muriel and Robert worked in the business and were its sole officers, but Muriel paid little attention to its corporate and financial affairs. Robert handled them alone. All of the couple's personal funds were derived from the business, and Robert also handled all their personal financial affairs. Routinely, he signed Muriel's name on checks and deposits. On numerous previous occasions, the couple's personal assets were used to enable the business to obtain necessary financing. On at least one prior occasion, Muriel signed her own name to a personal guaranty to a bank in exchange for a substantial business loan. Later, however, the loan was substantially increased when Robert signed both his own name and Muriel's to the guaranty. There were several other occasions on which Robert signed Muriel's name to a personal guaranty or some other form of personal undertaking. As Muriel was half owner of the business, it would have been obvi-

---

[1] At the same time he denied her motion for a new trial. Mass.R.Civ.P. 50(c)(1), 365 Mass. 815 (1974).

ous to Robert that Muriel would benefit generally as a result of the credit extended to the business in return for the guaranties and, in particular, as a result of the credit extended by Philip Morris. Robert testified that a reason he excluded Muriel from financial decisions, apart from her lack of understanding or interest, was because he wanted to protect her delicate health. Parenthetically, we note that Robert's testimony that he had no intention to defraud Philip Morris implied that he himself thought he had authority to sign her name to the guaranty. In any event, the evidence in its entirety gives rise to the inference that he reasonably had such a belief, based on past transactions in which Muriel participated or acquiesced, and, therefore, that he had implied authority to sign Muriel's name to the document.

Muriel's argument on appeal focuses on her own testimony and that of Robert to the effect that she knew nothing about the personal guaranty, that she would not have consented to it had she known about it, and that, as a result of a previous conflict between them about a personal guaranty to a bank, Robert knew she would oppose it. The jurors, however, were not required to credit that testimony.

*Judgment reversed.*
*Judgment on the verdict.*

*Toni G. Wolfman* for the plaintiff.
*Sumner H. Woodrow* for the defendant.