**In re John Thomas MICHAELS, Debtor.**

**Bankruptcy No. 91–14012–CJK.**

United States Bankruptcy Court,
D. Massachusetts.

July 23, 1993.

Margaret B. Drew, Norwood, MA, for Muriel N. Carpenter.

Neil E. Satran, Boston, MA, for debtor.

*MEMORANDUM OF DECISION
ON MOTION OF MURIEL
N. CARPENTER*

CAROL J. KENNER, Bankruptcy Judge.

Muriel N. Carpenter has filed what she entitled a "motion for relief from the automatic stay" in order that she may bring contempt proceedings against the Debtor to garnish his future earnings. The movant seeks leave to collect $8,133.20, representing the full amount due her, as the Debtor's former wife's attorney, under an order in the Debtor's divorce judgment requiring him to pay his former wife's attorney's fees (including costs). She argues that the obligation to pay attorney's fees is in the nature of an alimony or support obligation such that it is excepted from discharge under 11 U.S.C. § 523(a)(5), and such that its collection by garnishment of the Debtor's future earnings is excluded by 11 U.S.C. § 362(b)(2) from the scope of the automatic stay. Therefore, although the movant has entitled her pleading a motion for relief from stay, it is more accurately described as a motion for determination that the stay does not apply to the garnishment action she contemplates and perhaps also as a motion for a determination that the debt is excepted from discharge. The Debtor argues in response that the obligation to pay attorney's fees should not be categorized as alimony or support.

■ The Debtor argued, correctly, that a determination of nondischargeability should be sought through an adversary proceeding, not by motion. See Bankruptcy Rule 7001(6). But at the hearing on this motion, the Debtor waived this procedural objection and agreed to treat this motion as a proper request to determine the dischargeability of a debt. The parties further agreed that no evidentiary hearing would be necessary as the facts are not in dispute. The only evidence received was the Debtor's Judgment of Divorce Nisi and the Findings of Fact and Conclusions of Law entered in support of the judgment. Both were entered by Justice Malcolm Jones of the Probate and Family Court Department of the Trial Court of the Commonwealth of Massachusetts on May 14, 1990. The parties are content to submit this motion for adjudication on this evidence alone.

*Nondischargeable Alimony and Support*

■ Section 523(a)(5) reads as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

11 U.S.C. § 523(a)(5). Under this section, an obligation is excepted from discharge only if it is actually in the nature of alimony, maintenance, or support, whether or not it is labelled as such in the divorce decree, and (with exceptions not applicable here) only if the obligation has not been assigned.

■ This debt has not been assigned to another entity. The fact that it is payable to an entity other than the Debtor's former spouse does not mean that the debt has been assigned or that the obligation to pay it is not a debt to the former spouse within the meaning of § 523(a)(5). The Debtor's obligation to honor a debt owed by his ex-wife to a third party is just as

much a debt to the ex-wife as it is to the third party.[1] *In re Spong,* 661 F.2d 6, 10–11 (2d Cir.1981); *In re Calhoun,* 715 F.2d 1103, 1106–1107 (6th Cir.1983) ("[P]ayments in the nature of support need not be made directly to the spouse or dependant to be nondischargeable." *Id.* at 1107). The crucial question with respect to such obligations to third parties is whether they are actually in the nature of alimony or support.

■ Whether an obligation constitutes alimony or support, as opposed to property settlement, is an issue of federal bankruptcy law, not state law. The state law characterization of an obligation is relevant to this determination, but only as one among many factors to consider. The numerous courts that have identified relevant factors and discussed their relative importance have not settled on a common formula.[2] They have issued several. Most are rather general; and those that focus on specific factors tend to offer little guidance regarding their interaction and relative importance. This is understandable because as the courts agree, each determination of the nature of an obligation requires an *ad hoc* inquiry. *In re Gianakas,* 917 F.2d 759, 764 (3rd Cir.1990). Thus the cases do not so much disagree over the correct test as they simply tend to focus on different aspects of the inquiry, as each case requires.

■ The two cases that most specifically articulate the analysis required by

§ 523(a)(5) are *In re Gianakas, supra,* and *In re Calhoun,* 715 F.2d 1103, 1107 (6th Cir.1983). Of these, this Court prefers the *Gianakas* analysis:

> [W]hether an obligation is in the nature of alimony, maintenance, or support, as distinguished from a property settlement, depends on a finding as to the intent of the parties at the time of the settlement agreement. [Citations omitted.] That intent can best be found by examining three principal indicators. The many other factors referred to by various courts are merely elements of these indicators.
>
> First, the Court must examine the language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary....
>
> Because the language of the agreement alone may not provide a sufficiently conclusive answer as to the nature of an obligation, the second indicator ... is the parties' financial circumstances at the time of the settlement....
>
> Third, the court should examine the function served by the obligation at the time of the divorce or settlement. An obligation that serves to maintain daily necessities such as food, housing, and transportation is indicative of a debt intended to be in the nature of support.

*In re Gianakas,* 917 F.2d at 762–763.

■ This analysis has two virtues. First, it clarifies the relation between the

---

**1.** The third party has standing to bring an action to determine the dischargeability of the third-party debt. *In re Whitman,* 29 B.R. 362, 363 (Bankr.D.R.I.1983). The action need not be brought by the former spouse.

**2.** This issue has been frequently addressed in the United States Courts of Appeal. See *In re Spong,* 661 F.2d 6 (2d Cir.1981); *In re Melichar,* 661 F.2d 300 (4th Cir.1981); *In re Williams,* 703 F.2d 1055, 1057 (8th Cir.1983); *In re Calhoun,* 715 F.2d 1103, 1107 (6th Cir.1983); *Boyle v. Donovan,* 724 F.2d 681 (8th Cir.1984); *Shaver v. Shaver,* 736 F.2d 1314, 1316 (9th Cir.1984); *In re Harrell,* 754 F.2d 902 (11th Cir.1985); *In re Singer,* 787 F.2d 1033 (6th Cir.1986); *Tilley v. Jessee,* 789 F.2d 1074 (4th Cir.1986); *Draper v. Draper,* 790 F.2d 52, 54 (8th Cir.1986); *In re Yeates,* 807 F.2d 874 (10th Cir.1986); *In re Goin,* 808 F.2d 1391 (10th Cir.1987); *Forsdick v. Turgeon,* 812 F.2d 801, 803 (2d Cir.1987); *Sylvester*

*v. Sylvester,* 865 F.2d 1164 (10th Cir.1989); and *In re Gianakas,* 917 F.2d 759 (3rd Cir.1990).

The Court of Appeals for the First Circuit has not addressed the issue since enactment of the Bankruptcy Reform Act of 1978, which enacted the current Bankruptcy Code, including § 523(a)(5). But it did address the issue under the former Bankruptcy Act in *Damon v. Damon,* 283 F.2d 571 (1st Cir.1960). The Court held:

> If under the provisions for the wife pending and growing out of marital actions, counsel fees are allowed to the wife, and it is discernable that this allowance is made on the same basis as alimony, or other forms of support owed by a husband to his wife, thus the claim for counsel fees is not dischargeable in bankruptcy.

*Id.* at 573 *Damon* does not explain *how* one should discern whether an allowance is made on the same basis as alimony.

intent behind an obligation and the function of that obligation. *Gianakas*, like most other cases, frames the issue as one of intent: did the parties to the separation agreement, or the court that issued the divorce decree, intend to create a support obligation or just a property settlement obligation? Nonetheless, the courts seem to agree that where the function of an obligation in the financial circumstances existing when the agreement or order was entered is at odds with the express intent of the court or the parties, the express intent should not be dispositive. *Gianakas* makes this clear. *Gianakas*, equates intent not with the label that the parties or court affixed or (if they did not give it a label) would have affixed to the obligation, but with the design, function, or purpose of the obligation they structured. Therefore, to determine the parties' intent, a court must consider not only the language and substance of the settlement agreement or divorce judgment, but also the parties' financial circumstances at the time of the agreement or judgment, and the function served by the obligation.

Thus *Gianakas* differs from *Calhoun*. Under *Calhoun*, an obligation would be deemed a support obligation only if it were intended to create a support obligation *and* actually had the effect of providing necessary support. A failure of either condition—intent or effect—would be dispositive. *Gianakas* rightly rejects this multiple condition approach.[3] It employs only a single condition: proper intent, in the sense of design, function, or purpose. The three "primary indicators" it sets forth are not separate conditions but three relevant factors in a single inquiry.

**3.** Because *Calhoun* requires proof of both intent and effect, it seems to equate intent not with design, function, or purpose, but with the characterization that the parties, the court, or state law gave (or would have given) to the obligation. If this is a correct reading of *Calhoun*, then that decision would discharge an obligation that in design and purpose constituted support but that by nonbankruptcy law characterization did not. This would give dispositive effect to nonbankruptcy law characterizations, and would thus vitiate the principle, acknowl-

*Gianakas's* second virtue rests in what it does not require: proof that the amount of the support obligation is not so excessive, especially in view of the Debtor's present ability to pay and the former spouse's present needs, that it is not manifestly unreasonable under traditional concepts of support. *Calhoun* required such proof as a third condition of nondischargeability under § 523(a)(5).[4] *In re Calhoun*, 715 F.2d at 1110. This position has been rejected by most of the courts to have considered it. See *In re Gianakas*, 917 F.2d at 763; *Forsdick v. Turgeon*, 812 F.2d 801, 803 (2d Cir.1987); *Draper v. Draper*, 790 F.2d 52, 54 (8th Cir.1986); *Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir. 1989); and *In re Harrell*, 754 F.2d 902, 906–907 (11th Cir.1985).

*Calhoun* inserted this requirement to protect a debtor's right to a fresh start. It has been rejected for several reasons: It is not mandated by the language of § 523(a)(5). *In re Harrell*, 754 F.2d at 906. It would violate concerns of comity and "of necessity embroil federal courts in domestic relations matters which should properly be reserved to the state courts." *Id.* at 907; see also *Forsdick v. Turgeon*, 812 F.2d at 804 ("State-crafted family law mechanisms should not be disturbed by federal court intervention unless there is an unmistakable mandate from congress to do so in order to achieve a valid federal objective."). And had Congress desired to include a hardship consideration in § 523(a)(5), it could have done so, as it did in § 523(a)(8). *Id.* For these reasons, I agree with the majority's rejection of *Calhoun*'s "present needs" requirement.

*Discussion*

Using the analysis prescribed in *Gianakas*, I conclude that the Debtors' ob-

edged by *Calhoun* and virtually every court to have addressed this issue, that the determination of whether a debt is in the nature of alimony or support is one of federal bankruptcy law.

**4.** Calhoun further stated, "if the bankruptcy court finds the [obligation] too excessive to be fairly considered 'in the nature of support,' it must then set a reasonable limit on the nondischargeability of that obligation for purposes of bankruptcy." *In re Calhoun*, 715 F.2d at 1110.

ligation to pay his former spouse's attorney's fees is in the nature of alimony or support. I reach this conclusion on the basis of the parties' financial circumstances at the time of the divorce, the substance of their divorce judgment, and the function of this particular obligation. The divorce judgment itself does not expressly label the obligation.

Judge Jones's findings of fact shed light on the parties' financial circumstances at the time of their divorce. Both parties were insolvent, having incurred far more debt than they could service. They had already lost their home to foreclosure and were facing a large deficiency claim of $215,000.00. Approximately half of their liabilities were joint obligations with each other. The wife's liabilities totalled $411,-299.89 (of which $144,000 was tax debt), and the husband's, $481,258.08 (of which $15,000 was tax debt). By contrast, they had almost no assets of value to divide: only two automobiles, with a total value of $30,000. The parties owned other assets—stock in the husband's professional corporation, six shares of Procter & Gamble stock, furniture, and certain Dali prints—but the parties attributed no value to them, and neither did the court.

With respect to earning ability, Judge Jones found that with his dentistry practice, the Debtor could earn in excess of $100,000.00 per year and accumulate assets or savings. On the other hand, Judge Jones found that the wife's annual income at the time of the divorce was only $9,360.00. He found that as soon as all the children were attending school full time (the youngest was then five years old), she could increase this by returning to full-time employment, but also that "it is doubtful that she will be able to accumulate assets considering her historical financial record." Findings of Fact, p. 20.

In view of these findings, Judge Jones ordered the husband to pay $700.00 per week for the support of the couple's three children (physical custody of whom was given to the wife), and to provide their health insurance and pay their uninsured medical, dental, optical, and psychological expenses. He also ordered the husband to pay alimony of $200.00 per week and to continue providing the wife's health insurance coverage; both alimony and insurance coverage were to continue for five years, unless the wife were to die or remarry sooner. The husband was also ordered to continue providing the life insurance then in effect, and to pay to the wife forthwith an outstanding contempt arrearage (for failure to pay support) of $1,100.00. Both parties were ordered to contribute to the cost of a four-year college education for each of their three children in proportion to their financial capability when the children attend college (the oldest child was then ten years old). The husband was given the right to list two of the three children as dependents for federal and state income tax purposes, and the wife was given that right with respect to the third child.

With respect to the division of property, Judge Jones gave the wife one car (a 1984 Mercedes station wagon valued at $20,000) and the husband the other (another 1984 Mercedes valued at $10,000). The court allowed the husband to retain all his shares of stock in his professional corporation because he would need the stream of income from his practice to provide support for the children and pay the tax liabilities of the parties (but he did not order the husband to pay any tax liabilities for which the wife alone was liable). The court gave the wife the Procter & Gamble stock and allowed the parties to retain the bank accounts in their respective names and the tangible personal property then in their respective possession, except that they were to divide the Dali prints.

With respect to the parties' debts, the court ordered the husband to continue his payments to the Internal Revenue Service and to the Massachusetts Department of Revenue until his obligations to these taxing authorities were paid in full.[5] And the

---

5. Judge Jones's findings do not indicate what portion, if any, of the husband's tax debt the wife was jointly liable for. He found that the wife had tax liability of approximately $15,-000.00.

court ordered the husband to pay the attorney's fees and costs incurred by the wife in the divorce proceedings, a total of $8,113.20. But with respect to the remainder of the debt, the court made no order but instead expressly left the parties to decide whether they could pay the debt or should file petitions in bankruptcy.

Given the parties' financial circumstances and the structure of the divorce judgment, the order requiring the husband to pay the wife's attorney's fees served two functions. First, it prevented the wife from having to divert money needed to support herself and the children in order to pay her legal fees. The wife had no free assets with which to pay this obligation and was in no position to save any. She could not pay the attorney's fees herself without sacrificing support monies.

And second, the order permitted her to have the benefit of adequate legal representation in the divorce proceeding. As the Massachusetts Supreme Judicial Court has recognized, the need for such representation "is not materially different from those other needs—from subsistence to the education of children—which fall within the more common meaning of alimony of support." *Goldman v. Roderiques*, 370 Mass. 435, 437, 349 N.E.2d 335 (1976). Therefore, though the legal fees were extraordinary expenses, they filled a basic need.

In summary, the parties went into their divorce proceedings insolvent and with assets of little value to divide. The court structured their divorce judgment primarily to address the wife's and children's support needs, which, at least in the first years following the divorce, would clearly have to be funded by the husband. The wife had little or no ability to meet these needs on her own, much less to make payments on her attorney's fees and other debts. By ordering the husband to pay his former spouse's attorney's fees and costs, the court helped assure that support and alimony payments would be used for support purposes and that the wife would have the legal representation she needed.

 In view of these findings, I conclude that the Debtor's obligation to pay his former spouse's attorney's fees and costs constitutes alimony or support within the meaning of 11 U.S.C. § 523(a)(5) and therefore is excepted from discharge. And I further conclude that the garnishment proceedings that the movant contemplates are excluded by 11 U.S.C. § 362(b)(2) [6] from the operation of the automatic stay. A separate order will enter accordingly.

## *ORDER*

This matter having come before the Court on Muriel N. Carpenter "Motion for Relief From Automatic Stay," the motion having been heard, and a decision having been duly rendered,

It is hereby ORDERED and DECLARED that the obligation of the Debtor, John Thomas Michaels, to pay to Muriel N. Carpenter the attorney's fees and costs, in the total amount of $8,113.20, of his former spouse, Donna Lee Sprague, as ordered in their Judgment of Divorce Nisi, is excepted from discharge; and

It is further Ordered and Declared that the contempt proceedings contemplated by Muriel N. Carpenter to garnish the Debtor's future earnings to satisfy the above debt are not stayed by the automatic stay.

---

**6.** Section 362(b)(2) states:
 (b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—
 (2) under subsection (a) of this section, of the collection of alimony, maintenance, or support from property that is not property of the estate.
11 U.S.C. § 362(b)(2). The Debtor's earnings from services he performs after commencement of the case are not property of the estate. See 11 U.S.C. § 541(a)(6).