**In re Joel F. SOFORENKO, Debtor.**

**Rhonda SOFORENKO, Plaintiff,**

v.

**Joel F. SOFORENKO, Defendant.**

**Bankruptcy No. 95–40380–HJB.**
**Adversary No. 95–4204.**

United States Bankruptcy Court,
D. Massachusetts.

Jan. 7, 1997.

Peter M. Stern, Springfield, for Defendant.

James M. Smith, Lexington, Gary M. Weiner, Springfield, for Plaintiff.

Edward V. Sabella, Springfield, for Bruce D. Clarkin.

## *MEMORANDUM OF DECISION*

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court for determination is the complaint of Rhonda Soforenko (the "Plaintiff") against Joel F. Soforenko (the "Debtor"), her former husband. Through her complaint, the Plaintiff seeks to establish that certain obligations of the Debtor imposed under the terms of a state court divorce judgment are nondischargeable pursuant to 11 U.S.C. § 523(a)(5), 11 U.S.C. § 523(a)(15), or 11 U.S.C. § 523(a)(6).

## I. *Facts*

The following constitute findings of fact and conclusions of law, pursuant to Fed. R.Bankr.P. 7052.

### A. Prior Proceedings

The Judgment of Divorce Nisi (the "Decree") entered by the Commonwealth of Massachusetts Trial Court, Probate and Family Court Department, Hampden Division (the "Probate Court") on July 12, 1994 ordered the Debtor to pay to the Plaintiff the weekly sum of $300 for her support and $600 for the support of the minor children. The Decree also ordered various other payments and conveyances between the Debtor and the Plaintiff. However, to date, the following obligations of the Debtor to the Plaintiff decreed by the Probate Court have not been met:

1. assumption of and indemnification of the Plaintiff from liabilities associated with any and all encumbrances on the business property at 122 School Street, Springfield, Massachusetts (the "School Street Property") (in which the Debtor's law practice was located), including the existing mortgage with Bank of Boston (the "Indemnification Obligation");

2. payment of the sum of $50,000 to the Plaintiff ($10,000 per year for a period of five years), as well as an additional sum of $7,500 on or before September 1, 1994 (the "$57,500 Obligation") (referred to by the Decree as a "property distribution");

3. repair of the pool at 57 Fernwood Drive, East Longmeadow (the former marital residence and the present residence of the Plaintiff and the minor children), in such a manner as to fully eliminate its then dangerous condition and without reducing the fair market value of the property (the "Pool Repair Obligation"); and

4. payment of the sum of $20,000 to Bruce D. Clarkin, attorney for the Plaintiff, on account of legal services and expenses in connection with the divorce proceeding (the "Attorney's Fee Obligation").[1]

On January 31, 1995, the Debtor filed with this Court a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Plaintiff timely filed the instant complaint maintaining that the above obligations were nondischargeable under either § 523(a)(5), § 523(a)(15), or § 523(a)(6). After the completion of approximately four days of testimony, the Court took the matter under advisement.

### B. Circumstances of the Parties

The Debtor and the Plaintiff were divorced on July 12, 1994 after approximately 15 years of marriage. They have three minor children who reside with the Plaintiff. The Debtor is a sole practitioner whose law firm, Soforenko & Associates, P.C., primarily handles personal injury and bankruptcy cases.

The Plaintiff has attained Bachelor of Science and Master's degrees in speech pathology. In fact, she was employed as a speech therapist until 1985, after which time she stopped working outside of the home in order to attend to the needs of the minor children. Shortly after the divorce, the Plaintiff began working full-time as a speech therapist with the Ludlow School Department.

After examining the evidence presented as to the financial circumstances of the parties,

---

1. Bruce D. Clarkin filed a separate complaint objecting to the dischargeability of the attorney's fee obligation. *See* Adversary Proceeding No. 95–4186. The Court agreed to consolidate the related matters for trial.

the Court makes the following findings as to the income and expenses of the Debtor and the Plaintiff, both at the time of the divorce and at the time of trial.

### 1. Debtor's Income and Expenses

The Debtor testified that the financial statement, dated April 28, 1993, submitted to the Probate Court, (Ex. J), represented a fair and accurate description of his economic condition at the time of the divorce. (Mar. 1, 1996 Tr. at 116.) That financial statement reflected that the Debtor received a gross salary of $1,435 per week from Soforenko and Associates, P.C.[2] In addition, the Debtor testified that he received fringe benefits from the law firm not reflected in the financial statement. For example, the law firm paid for an automobile for the Debtor's use and all expenses associated with the vehicle, including insurance and maintenance. (Mar. 1, 1996 Tr. at 51.) Additionally, the law firm also paid for the Debtor's legal expenses incurred in both his divorce and bankruptcy cases. (Mar. 1, 1996 Tr. at 75–77.) The firm also provided a "cafeteria" health insurance plan for the Debtor and the law firm employees. (Mar. 1, 1996 Tr. at 99.)

From his salary, the Debtor paid $900 per week in alimony and child support. (Ex. A ¶ 14.) In addition, the April 28, 1993 financial statement listed weekly tax deductions of $458.61 and weekly living expenses of $209.00. Thus, the Debtor's expenses *exceeded* his net income by $132.61 per week.

With respect to the Debtor's assets, the April 28, 1993 financial statement described only $1,300 in savings. However, the Decree also awarded the Debtor the School Street Property. The Probate Court Master's Draft Report, dated April 15, 1994 and followed, as amended, by the Probate Court (the "Master's Report"), estimated that the School Street Property had equity of $125,000. (Def.'s Ex. 3 at 8.)

At the time of trial in the instant matter, the Debtor testified that his gross weekly

salary from the law firm was $1,495. (April 12, 1996 Tr. at 125.) The Debtor also testified that his current expenses were substantially similar to those shown in a September 7, 1995 financial statement also furnished to the Probate Court. (April 12, 1996 Tr. at 128; Def.'s Ex. 6.) That financial statement listed, in addition to the Debtor's $850 weekly payment in alimony and child support[3], weekly tax deductions in the amount of $361.31, and weekly expenses of $209.00. Thus, the Debtor had only $74.69 in excess income at the end of each week.

The Debtor testified that, at the time of trial, his only assets (other than the proprietary interest in his law firm) were approximately $300 in checking accounts and $400 in an IRA. (April 12, 1996 Tr. at 128–29.) The School Street Property awarded to the Debtor by the Probate Court had been foreclosed upon and there is deficiency owed in the approximate amount of $90,000.

### 2. Plaintiff's Income and Expenses

The Plaintiff testified that her financial statement dated May 24, 1993, furnished to the Probate Court, (Ex. H), represented a fair and accurate description of her economic condition at the time of the divorce. (Feb. 29, 1996 Tr. at 120.) The Probate Court awarded the Plaintiff $300 in alimony per week and $600 in child support per week. (Ex. A ¶ 14.) This was the Plaintiff's only source of income at the time of the divorce. The May 24, 1993 financial statement listed weekly expenses of $1,157.28. Therefore, the Plaintiff's expenses *exceeded* her income by $257.28 on a weekly basis. The Plaintiff's assets consisted of $68,630 in equity in the marital home, $25,011.17 in an IRA, and $1,448.87 in a savings account. (Ex. H).

At the time of trial, the Plaintiff was earning a gross yearly salary of $36,237 as a speech therapist, (Feb. 29, 1996 Tr. at 118), resulting in a weekly salary of $696.86. In addition the Plaintiff received $250 per week in alimony and $600 per week in child sup-

---

**2.** The gross receipts of Soforenko & Associates, P.C. totaled $433,432.82 in 1994, but declined to $370,586.39 in 1995. (Pl.'s Ex. 102.)

**3.** On September 14, 1995, the Probate Court reduced the Debtor's weekly alimony obligation to $250.00 per week, a reduction of $50 per week. The child support obligation remained $600.00 per week. (Ex. E.)

port from the Debtor. (Ex. E). Thus, the Plaintiff's total weekly income amounted, at the time of trial, to the sum of $1,546.86.

The Plaintiff testified that a financial statement, dated May 31, 1995, furnished to the Probate Court, (Ex. G), was a fair and accurate description of her economic condition at the time of trial in the instant matter. (Feb. 29, 1996 Tr. at 126.) Based on that statement and the Plaintiff's testimony[4], it appears that her total weekly expenses equaled $1,702.35. Therefore, the Plaintiff's expenses *exceeded* her income by $155.49 on a weekly basis.

Despite operating her household at a deficit from the time of the divorce until the time of trial, the Plaintiff has somehow managed to accumulate significant savings. The Plaintiff testified that at the time of trial her assets consisted of a $5,000 certificate of deposit, (Feb. 29, 1996 Tr. at 159); a combined balance of $11,590 in her checking and savings accounts as of February 21, 1996, (Feb. 29, 1996 Tr. at 166); an IRA of $27,000, (Feb. 29, 1996 Tr. at 129); and equity of $73,000 in the marital home. (Feb. 29, 1996 Tr. at 160.) In addition, from January of 1995 until the time of trial, the Plaintiff paid James M. Smith, one of her attorneys, from $500 to $1,000 every month. (Feb. 29, 1996 Tr. at 161–64.)[5]

## II. *Positions of the Parties*

The Plaintiff argues that each of the Debtor's above referenced unmet obligations is in the nature of support and thus is nondis-chargeable pursuant to § 523(a)(5). The Plaintiff further argues that to the extent that this Court should find that any of the obligations are in the nature of a property distribution, rather than support for the purposes of § 523(a)(5), the obligation is nondischargeable pursuant to § 523(a)(15) since the Debtor has the ability to pay the obligation, and the detriment to the Plaintiff of nonpayment far outweighs the benefit of the discharge to the Debtor. The Plaintiff also argues that the obligations are nondischargeable under § 523(a)(6) in that the Debtor willfully and maliciously caused injury to her by allowing property to be either spent, converted, foreclosed, or abandoned.

The Debtor contends that each of the obligations is in the nature of a property distribution, and therefore dischargeable notwithstanding § 523(a)(5). Furthermore, the Debtor argues that he should prevail even in the face of § 523(a)(15) because he does not have the ability to pay any of the obligations, and the benefit of the discharge to him far outweighs any potential detriment to the Plaintiff.

## III. *Discussion*

### A. Application of § 523(a)(5)

■ Section 523(a)(5) divides obligations arising from a marital dissolution into two groups: (1) nondischargeable alimony, maintenance, and support [hereinafter "support"]; and (2) property settlements.[6] An obligation

---

**4.** The May 31, 1995 financial statement listed total weekly deductions and living expenses of $1760.50. However, the expenses should be increased by $10.85, representing increased medical expenses of $7.00 per week and additional temple dues of $3.85 per week. (Feb. 29, 1996 Tr. at 127–29.) In addition, the expense calculation includes a $50 weekly payment to Attorney Bruce Clarkin. However, the Plaintiff testified that she has made no payments to Attorney Clarkin. (Feb. 29, 1996 Tr. at 161.) The expense calculation also appears to include a duplicate expense for medical insurance. The May 31, 1995 financial statement provides for a $19.00 deduction from the Plaintiff's gross income for medical insurance; yet the Plaintiff's expenses on the financial statement include another $19.00 medical insurance expense.

**5.** The Plaintiff's ability to accumulate savings while operating at a deficit was not explained at

trial, nor was this inconsistency challenged by the Debtor.

**6.** Section 523(a)(5) provides:

(a) a discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(a) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Govern-

labeled as support is nondischargeable only if it is actually in the nature of support. § 523(a)(5)(B). This determination is one of federal law. *E.g., Brody v. Brody (In re Brody),* 3 F.3d 35, 39 (2d Cir.1993); *Gianakas v. Gianakas (In re Gianakas),* 917 F.2d 759, 762 (3d Cir.1990); *Sinewitz v. Sinewitz (In re Sinewitz),* 166 B.R. 786, 788 (Bankr. D.Mass.1994).

Consequently, the bankruptcy court is required to make an independent determination as to whether the obligation is the result of a division of marital property, or whether it was intended to be in the nature of support. *Gibbons v. Gibbons (In re Gibbons),* 160 B.R. 473, 475 (Bankr.D.R.I.1993). The court is not bound by either the state court's characterization of the obligation, or the label attached to the obligation by the parties. *E.g., Forsdick v. Turgeon,* 812 F.2d 801, 803 (2d Cir.1987); *Harrell v. Sharp (In re Harrell),* 754 F.2d 902, 905 (11th Cir. 1985); *Linet v. Azia (In re Azia),* 159 B.R. 71, 73 (Bankr.D.Mass.1993).

Whether a debt constitutes support or a property settlement is determined by the intent either of the parties at the time of the settlement agreement, or in the absence of an agreement, by the intent of the state court at the time the order was issued.[7] *Gianakas,* 917 F.2d at 762; *Sweck v. Sweck (In re Sweck),* 174 B.R. 532, 534 (Bankr. D.R.I.1994); *Azia,* 159 B.R. at 73; *Zalenski v. Zalenski (In re Zalenski),* 153 B.R. 1, 2 (Bankr.D.Me.1993).

Bankruptcy Courts in this circuit have applied a variety of multi factor tests to discern intent. *E.g., Wolfe v. McCartin (In re McCartin),* 204 B.R. 647, 652 (Bankr.D.Mass. 1996) (Judge Feeney used test consisting of seven factors); *Sweck,* 174 B.R. at 534 (Judge Votolato of the District of Rhode

Island utilized seven factor test); *Stitham v. Stitham (In re Stitham),* 154 B.R. 1, 2–3 (Bankr.D.Me.1993) (Judge Haines applied four factor test); *Peterson v. Fagan (In re Fagan),* 144 B.R. 204, 206 (Bankr.D.Mass. 1992) (Judge Hillman adopted seven factor test); *Altavilla v. Altavilla (In re Altavilla),* 40 B.R. 938, 941 (Bankr.D.Mass.1984) (Judge Lawless employed an eight factor test); *see Bourassa v. Bourassa (In re Bourassa),* 168 B.R. 8, 10–11 (Bankr.D.N.H.1994) (Judge Vaughn); *Warren v. Warren (In re Warren),* 160 B.R. 395, 399 (Bankr.D.Me.1993) (Judge Haines used additional factors to determine whether obligation to pay college expenses constituted support).

This Court adopts the approach developed by the Third Circuit in *Gianakas.* 917 F.2d at 762–63; *see Azia,* 159 B.R. at 74 (Judge Queenan of this District follows *Gianakas* ); *In re Michaels,* 157 B.R. 190, 193–94 (Bankr.D.Mass.1993) (Judge Kenner employs *Gianakas* analysis); *Zalenski,* 153 B.R. at 2 (Judge Goodman of the District of Maine adopts *Gianakas* approach). The *Gianakas* court examined three principal indicators of intent: (1) the language and substance of the state court's order; (2) the parties' financial circumstances at the time of the order; and (3) the function served by the obligation at the time of the order. 917 F.2d at 762–63. In addition, the party seeking to establish that the debt is nondischargeable pursuant to § 523(a)(5) carries the burden of proving the elements of nondischargeability by a preponderance of the evidence. *E.g., Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); *Gianakas,* 917 F.2d at 761; *Sinewitz,* 166 B.R. at 788.

## 1. The Indemnification Obligation

The Decree ordered the Debtor to assume and hold the Plaintiff harmless "from

---

ment or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.] 11 U.S.C. § 523(a)(5).

**7.** Although the Plaintiff has apparently managed her finances very well since the divorce, the

§ 523(a)(5) inquiry examines only the parties' circumstances at time of the divorce, not their present circumstances. *E.g., Fitzgerald v. Fitzgerald (In re Fitzgerald),* 9 F.3d 517, 520–21 (6th Cir.1993); *Gianakas,* 917 F.2d at 762; *Forsdick,* 812 F.2d at 803–04; *Draper v. Draper,* 790 F.2d 52, 54 (8th Cir.1986); *Harrell,* 754 F.2d at 907; *Sinewitz,* 166 B.R. at 789.

the cost (sic) of any and all encumbrances" on the School Street Property. The School Street Property, where the Debtor operated his law firm, was acquired by the Debtor in January 1985 for the sum of $88,000. (Ex. L; Mar. 1, 1996 Tr. at 20.) The Debtor executed a mortgage for $70,400 (note was not provided) on January 25, 1985. (Ex. L–1.) On August 23, 1985, the Plaintiff executed a mortgage in the amount of $88,000 on the School Street Property to the Bank of Boston. (Ex. L–2). On August 27, 1985, the Debtor transferred the property to the Plaintiff for $88,000. (Ex. L–2; March 1, 1996 Tr. at 20.)[8] In October of 1986, the Debtor decided to refinance the property. Unbeknownst to the Plaintiff, he again transferred the property to the Plaintiff, this time for $144,000. (Ex. L–2). The refinancing called for a new promissory note and mortgage to be executed by the Plaintiff. But the Plaintiff never signed the new note or mortgage. Instead, the Debtor signed the Plaintiff's name to those instruments. (Ex. L–2; Ex. L–3; Mar. 1, 1996 Tr. at 21.)

■ On December 7, 1995, the Bank of Boston foreclosed on the School Street Property. A $90,000 deficiency resulted. Pursuant to the Decree, the Debtor is required to indemnify the Plaintiff with respect to the deficiency. The Plaintiff maintains that she is not liable on the note because the Debtor forged her name on the note and mortgage. The Debtor does not deny that he signed the

Plaintiff's name on the note and mortgage. (March 1, 1996 Tr. at 21.) Rather, the Debtor contends that he had authority, as the Plaintiff's agent, to obligate her on the note and mortgage.[9] This Court need not resolve the liability of the Plaintiff on the note and for the resulting deficiency in this proceeding. If the Plaintiff turns out to have no liability, she has nothing to worry about, as the indemnification issue would be moot. This Court will therefore go on to determine the dischargeability of the Indemnification Obligation, assuming, based on facts not now foreseeable, that the Plaintiff has an obligation with respect to which she requires indemnification.

Applying the *Gianakas* analysis to the Indemnification Obligation, the Court concludes that the obligation is in the nature of support. Although the language of the Decree does not explicitly identify the Indemnification Obligation as either support or a property settlement, the Master's Report clearly indicated that the Plaintiff needed "a marital home free from the business debt of the [Debtor] as a residence for herself and the children." (Def.'s Ex. 3 at 8.)

At the time of the divorce, it would have been impossible for the Plaintiff to pay the indebtedness on the School Street Property. The Plaintiff's only source of income was the Debtor's weekly support payment of $900, and the Plaintiff's expenses exceeded those support payments by $257.28 each week. As

8. The mortgage from the Plaintiff to Bank of Boston predated the execution of the deed from the Debtor to the Plaintiff. However, the mortgage was recorded at the Registry of Deeds after the conveyance.

9. At trial, the Debtor asserted that he had inherent authority, based solely on the marital relationship, to sign his wife's name to the note. (April 12, 1996 Tr. at 153.) That argument has not been viable in Massachusetts since the year 1855. See Mass.Gen.L. ch. 304, § 3 (1855) ("Any woman, hereafter married, may, while married, bargain, sell and convey her real and personal property, and enter into any contract in reference to the same, in the same manner as if she were sole ..."). Further, the "mere relation[ship] of husband and wife is not sufficient to show that one spouse is acting as the agent of another." *Del Bianco v. Boston Edison Co.*, 338 Mass. 657, 659, 156 N.E.2d 683, 686 (1959); *Hannon v. Schwartz*, 304 Mass. 468, 470, 23

N.E.2d 1022, 1023 (1939); *Harvey v. Squire*, 217 Mass. 411, 414, 105 N.E. 355, 355 (1914); *Campbell v. Olender*, 27 Mass.App.Ct. 1197, 1198, 543 N.E.2d 708, 709 (1989); *Fennell v. Wyzik*, 12 Mass.App.Ct. 909, 910, 422 N.E.2d 1387, 1389 (1981); see *Wetherbee v. Matowitz*, 375 Mass. 784, 784, 377 N.E.2d 933, 934 (1978); *Philip Morris, Inc. v. Litel*, 30 Mass.App.Ct. 936, 937, 569 N.E.2d 846, 848 (1991).

In a post-trial memorandum of law, the Debtor changed his argument to better conform to a late 20th century approach, and argued that he had implied authority to sign his wife's name based on the Plaintiff's prior course of conduct. The Plaintiff disagrees. Based on the Plaintiff's allegations, the Bank has filed a nondischargeability complaint against the Debtor pursuant to 11 U.S.C. § 523(a)(2). See *The First Nat'l Bank of Boston, N.A. v. Soforenko*, Adversary Proceeding No. 95–4285 (Bankr.D.Mass.). However, as set forth below, the Court need not resolve this dispute today.

a result, the Bank would likely have attached the home in which the Plaintiff and the children resided. *See Sanders v. Lanfare (In re Sanders),* 187 B.R. 588, 596 (Bankr.N.D.Ohio 1995) (Debtor's indemnification of business debts operated as support where nondebtor spouse's payment of those debts would have precluded payment of household obligations); *Chapman v. Chapman (In re Chapman),* 187 B.R. 573, 576 (Bankr.N.D.Ohio 1995) (indemnification of debts was support where Debtor's nonpayment of debts could result in attachment of property at which nondebtor spouse and children resided). *But see Dressler v. Dressler (In re Dressler),* 194 B.R. 290, 298 (Bankr.D.R.I.1996) (Judge Haines of the District of Maine sitting by designation) (indemnification obligation associated with business debt was not support even though nondebtor spouse could not shoulder debt).

Courts have consistently held that where an obligation is essential to enable a party to maintain a basic necessity such as food, lodging or transportation, the payment of the debt is in the nature of support. *Gianakas,* 917 F.2d at 764 (provision for family home is one of the traditional components of support and maintenance); *Azia,* 159 B.R. at 74. Based on the observation in the Master's Report that the Plaintiff needed a home free from the Debtor's business debt, the Court is persuaded that the Probate Court intended the obligation to serve as support. The Indemnification Obligation clearly was intended to protect the home in which the Plaintiff and the children resided. It is, therefore, nondischargeable support. *See Sweck,* 174 B.R. at 536 (indemnification of debt on yacht was support); *Zalenski,* 153 B.R. at 3 (indemnification of marital debts was intended to be support in order to relieve the Plaintiff from having to make payments thereon).

### 2. Pool Repair Obligation

▇ The Decree provided that the Debtor was to repair the pool hazard at the marital home. At the time of trial in the instant proceeding, the swimming pool was no longer in use, the walls had collapsed, and it was not protected by a fence. The Master's Report concluded that the pool consti-

tuted an extremely dangerous hazard. (Def.'s Ex. 3 at 8.) The Plaintiff testified that the pool needs to be demolished and covered over. The estimated cost of repair is $2,000–$2,500. (Feb. 29, 1996 Tr. at 127.)

The Master's Report fails to indicate whether the Pool Repair Obligation was intended to be support or property distribution. Although either party could have raised sufficient funds to pay for the repair, the Plaintiff could have done so only by invading her IRA or further encumbering the marital home without an additional source of income with which to repay that obligation. Further, the pool repairs were necessary to provide an adequate and safe place for the Plaintiff and children to live. The Court therefore, concludes that the Pool Repair Obligation was intended as support.

### 3. $57,500 Obligation

▇ The Probate Court ordered the Debtor to pay the Plaintiff $10,000 per year for a period of five years, and the sum of $7,500 on or before September 1, 1994. The court characterized this award as a property settlement. While the Probate Court's characterization of the award is not determinative, it is strongly indicative that the $57,500 obligation was intended as a property settlement. *See Forsdick,* 812 F.2d at 803. Further, the Probate Court made other provisions for the support of the Plaintiff and the minor children. While the support payments ordered by the Probate Court may not have comported with the Plaintiff's description of her needs at the time of the divorce, there was no evidence presented that the Probate Court intended that these payments were tied to the support of the Plaintiff or minor children. The Plaintiff has, therefore, not carried her burden of proof on the characterization of this obligation as support.

### 4. Attorney's Fee Obligation

▇ The Decree ordered the Debtor to pay to Bruce D. Clarkin, attorney for the Plaintiff, $20,0000 for legal services and expenses in connection with the divorce proceedings.[10] The majority of courts have held

---

**10.** The parties stipulated that payments as to attorney's fees have not been assigned. (Feb. 29,

that obligations to pay a nondebtor spouse's legal fees constitute support when the underlying obligation to which the attorney's fee related was in the nature of support. *E.g., Macy v. Macy,* 200 B.R. 467, 469 (D.Mass. 1996); *Azia,* 159 B.R. at 75–76 (legal fees are in nature of support when they relate to services concerning support); *Young v. Young (In re Young),* 72 B.R. 450, 453 (Bankr.D.R.I.1987) (since fees were integral to and awarded as part of other nondischargeable obligations, fees were also nondischargeable). *But see Gard v. Gibson (In re Gibson),* 103 B.R. 218, 221–22 (9th Cir.BAP 1989) (attorney's fee award was not support); *Wester v. Wester (In re Wester),* 187 B.R. 358, 361 (Bankr.M.D.Fla.1995) (same). For example, this Court has previously held that the classification of attorney's fees should follow the classification of the primary obligation in determining their nature for dischargeability purposes. *Sinewitz,* 166 B.R. at 788; *see Macy,* 200 B.R. at 469 (adopts *Sinewitz* holding).

█ Since the fees in this case were incurred incident to the divorce decree itself, the Court must apply the *Gianakas* analysis in order to determine whether the award of attorney's fees is support or a property settlement. *See Kline,* 65 F.3d at 751 (award of fees incurred in divorce proceeding was support based on financial circumstances of the parties); *Joseph,* 16 F.3d at 88 (attorney's fee obligation deemed nondischargeable if the obligation itself reflects a balancing of the parties' needs); *Michaels,* 157 B.R. at 195 (applied *Gianakas* factors to determine whether attorney's fee obligation was dischargeable).

Although the Decree did not expressly label the Attorney's Fee Obligation as support or a property settlement, the financial circumstances of the parties and the function served by the obligation indicate that the Probate Court intended the Attorney's Fee Obligation to serve as support. In addition, although federal law determines what constitutes support, in this case state law offers guidance. *Macy v. Macy (In re Macy),* 192 B.R. 802, 805 (Bankr.D.Mass.), *aff'd,* 200 B.R. 467 (D.Mass.1996); *Michaels,* 157 B.R. at 193. In holding that an obligation for attorney's fees was not discharged under the Bankruptcy Act, the Supreme Judicial Court stated "... a spouse's need for adequate legal representation in a lawsuit affecting the marital status is not materially different from those other needs—from subsistence to the education of children—which fall within the more common meaning of alimony or support...." *Goldman v. Roderiques,* 370 Mass. 435, 437, 349 N.E.2d 335, 336 (1976); *see Pauley v. Spong (In re Spong),* 661 F.2d 6, 9 (2d Cir.1981) (award of attorney's fees may be essential to a spouse's ability to sue or defend a matrimonial action); *Gibbons,* 160 B.R. at 477 (financial circumstances and need for legal representation led court to conclude attorney's fee obligation was support); *Michaels,* 157 B.R. at 196 (same).

At the time of the divorce, the Plaintiff's only source of income was $900 a week in alimony and child support; yet her living expenses totaled $1,157.28. Although she had an IRA of some worth and equity in the the marital home, it is unlikely that the Probate Court, concerned for her survival, would have expected her to either exhaust all of her retirement funds (incurring a penalty and tax obligation) or further encumber the marital home. Therefore, in examining the financial circumstances of the parties, and recognizing the Plaintiff's need for legal representation, the Court finds that the Attorney's Fee Obligation was also in the nature of support.

1996 Tr. at 16.) *See Michaels,* 157 B.R. at 192–93. As a result, Bruce Clarkin, who has filed a separate adversary proceeding, has standing to bring an action to determine the dischargeability of the Attorney's Fee Obligation. *See, e.g., Holliday v. Kline (In re Kline),* 65 F.3d 749 (8th Cir.1995); *Miller v. Gentry (In re Miller),* 55 F.3d 1487, 1490 (10th Cir.1995); *Joseph v. J. Huey O'Toole, P.C. (In re Joseph),* 16 F.3d 86 (5th Cir.1994); *Peters v. Hennenhoeffer (In re Peters),* 964 F.2d 166 (2d Cir.1992); *Spear v. Constantine*

*(In re Constantine),* 183 B.R. 335, 336 (Bankr. D.Mass.1995); *Heintz v. Tremblay (In re Tremblay),* 162 B.R. 60, 62 (Bankr.D.Me.1993); *Michaels,* 157 B.R. at 193 n. 1; *Mainelli v. Whitman (In re Whitman),* 29 B.R. 362, 363 (Bankr. D.R.I.1983). *But see O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Brown–Wright & Associates v. Perlin (In re Perlin),* 30 F.3d 39 (6th Cir.1994) (attorney lacked standing to contest dischargeability of fee award).

## B. Application of § 523(a)(15)

■ The fact that an obligation is determined to be a property settlement under § 523(a)(5) does not end the inquiry as to its dischargeability. The Plaintiff asserts that to the extent the Court finds any of the contested obligations to be a property settlement, such obligations are dischargeable under § 523(a)(15) [11].

■ Consideration of § 523(a)(15) is triggered if: (1) the debt is determined not to be in the nature of alimony, maintenance, or support; and (2) the debt is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree, or other order of a court of record. The court is then required to determine whether the debtor has the ability to pay the obligation in question out of income not reasonably necessary for the debtor's support or the support of a dependant or for the operation, preservation, or continuation of the Debtor's business. § 523(a)(15)(A). If the debtor does not have the ability to pay, the inquiry ends; the debt is dischargeable. *E.g., Willey v. Willey (In re Willey)*, 198 B.R. 1007, 1015 (Bankr. S.D.Fla.1996); *Dressler*, 194 B.R. at 300 n. 26; *Woodworth v. Woodworth (In re Woodworth)*, 187 B.R. 174, 177 (Bankr.N.D.Ohio 1995). However, if the debtor does have the ability to pay the debt at issue, the Court must then weigh the benefit to the debtor of discharging such debt against the detriment to the nondebtor spouse or child of nonpayment. § 523(a)(15)(B). If the benefit to the debtor outweighs the detriment to the non-debtor spouse or child, the debt is dischargeable. Conversely, if the detriment to the nondebtor spouse or child outweighs the benefit of discharge to the debtor, the debt is nondischargeable.

■ An analysis of the debtor's ability to pay under § 523(a)(15)(A), and the balancing of the benefits and detriments of a discharge to the parties under § 523(a)(15)(B), must examine the circumstances of the parties at the time of trial. *E.g., Dressler*, 194 B.R. at 300; *Christison v. Christison (In re Christison)*, 201 B.R. 298, 308–09 (Bankr.M.D.Fla. 1996); *In re Smither*, 194 B.R. 102, 107 (Bankr.W.D.Ky.1996); *cf. McCartin*, 204 B.R. at 654 (considers debtor's income at time of petition, time of complaint, and time of trial).

The case law as to which party bears the burden of proof under § 523(a)(15) is in complete disarray. For a comprehensive analysis of the varying views of bankruptcy courts as to burden of proof in the § 523(a)(15) arena, see Judge Bennett's opinion in *Stone v. Stone (In re Stone)*, 199 B.R. 753 (Bankr. N.D.Ala.1996) and Judge Haines' decision in *Dressler*, 194 B.R. at 290.[12] Fortunately, this Court need not enter the quagmire at this time as allocation of the burden of proof is not necessary in order for the Court to deter-

---

11. Section 523(a)(15) provides:
(a) a discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

12. Judge Feeney of this District has adopted the majority view that once the creditor spouse proves that the debt is not of a kind governed by § 523(a)(5), the burden then shifts to the debtor to prove either his inability to pay or that the benefit to the debtor of the discharge outweighs the detriment to the creditor spouse. *McCartin*, 204 B.R. at 653. Conversely, Judge Haines of the District of Maine and Judge Highgas of the Commonwealth of Massachusetts Trial Court, Probate and Family Court Department, Essex Division follow a minority of courts that have held that the creditor spouse bears the entire burden of proof. *Dressler*, 194 B.R. at 303; *Maloney v. Maloney*, No. 89D–2095–D1, Judgment at 12 (November 29, 1996).

mine the dischargeability of the $57,500 Obligation. It is clear from the evidence that the Debtor does not have the ability to pay this obligation.

This Court has already determined that the $57,500 Obligation is not in the nature of support. Likewise, the said obligation was incurred in connection with a divorce decree. Therefore, the Court must apply the § 523(a)(15) tests.

As indicated by the statutory language of § 523(a)(15)(A), a determination of the Debtor's ability to pay is arrived at by subtracting those expenses "reasonably necessary" for the maintenance or support of the debtor and his dependents from his income. § 523(a)(15)(A). The majority of courts have adopted the disposable income test of 11 U.S.C. § 1325(b)(2)[13] in order to assess the debtor's ability to pay. *E.g., McCartin,* 204 B.R. at 654; *Dressler,* 194 B.R. at 304; *Smither,* 194 B.R. at 108; *Hill v. Hill (In re Hill),* 184 B.R. 750, 755 (Bankr.N.D.Ill.1995). *But see Straub v. Straub (In re Straub),* 192 B.R. 522 (Bankr.D.N.D.1996) (adopts standard used for a hardship student loan discharge pursuant to § 523(a)(8)); *Comisky v. Comisky (In re Comisky),* 183 B.R. 883 (Bankr.N.D.Cal.1995) (same). This disposable income test consists of weighing the debtor's income against expenses and determining whether, after allowing for what is reasonably necessary for support, there is

anything left over. It seems best suited to do the task at hand.

At the time of trial, the Debtor had weekly income of $1495, and weekly expenses of $1420.31.[14] Although this leaves $74.69 in disposable income each week, this excess income must be used to pay the other debts which the Court has already held are nondischargeable. Assuming the Debtor dedicates all of his disposable income to these obligations, it will take the Debtor more than five years to pay the Attorney's Fee and Pool Repair Obligations alone, not even considering the impact of the Indemnification Obligation. As a result, the Debtor clearly does not have the ability to pay the $57,500 Obligation without sacrificing his well-being. Therefore, the Court must find the $57,500 Obligation dischargeable. Consequently, it is unnecessary for the Court to go further and weigh the relative benefits and detriment to the parties of discharging the obligations.

## C. Application of § 523(a)(6)

█ Although the Plaintiff amended the complaint to include a § 523(a)(6)[15] count, the Plaintiff apparently abandoned this claim. The Plaintiff only offered some very limited explanation as to the basis and import of the § 523(a)(6) claim during the Plaintiff's direct examination of Bruce Clarkin. (Feb. 29, 1996 Tr. at 48–49.) However, the Plaintiff never offered any evidence to support the

---

13. Section 1325(b)(2) provides:

> For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
> (A) for the maintenance or support of the debtor or a dependent of the debtor; and
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

14. The Plaintiff spent the vast majority of the four day trial attempting to prove that the Debtor had additional income which he failed to report. The Plaintiff alleged that the Debtor was keeping earned fees in the law firm's IOLTA account, that there were significant discrepancies with respect to payroll, and that the law firm paid many of the Debtor's personal expenses.

With respect to the IOLTA account and payroll discrepancies, the Debtor offered explanations

which the Court found both logical and credible. The Plaintiff was unable to prove anything beyond minor bookkeeping errors. With respect to the payment of the Debtor's personal expenses by the law firm, the Court agrees that these should have been included in the Debtor's calculation of his income and expenses. However, the Plaintiff did not provide any basis to calculate the total amount that should have been imputed to the Debtor's income on account of these benefits. At any rate, it is unlikely that the value of the benefits would significantly alter the Debtor's ability to pay.

15. Section 523(a)(6) provides:

> (a) a discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
> (5) for willful and malicious injury by the debtor to another entity or to the property of another entity.

claim or even mentioned the claim again during the course of the trial. Consequently, the Court finds no basis for this claim.

### IV. *Conclusion*

In accordance with the foregoing, the Court holds that the Indemnification, Pool Repair, and Attorney's Fee Obligations are nondischargeable as support owed to the Plaintiff for her benefit or for the benefit of the minor children, pursuant to § 523(a)(5). The $57,500 Obligation is determined to be dischargeable, notwithstanding § 523(a)(5) and § 523(a)(15) since the obligation was intended as a property distribution and the Debtor does not have the ability to pay the debt out of any disposable income. The Court also finds for the Debtor with respect to the Plaintiff's § 523(a)(6) claim as the Plaintiff failed to prosecute the claim, or if prosecuted, the Plaintiff failed to sustain her burden of proof.